J
BB

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 AUG 21   PM 3: 57

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LARRY MICHAEL LEAL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:12-CV-136 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION TO DENY PETITION FOR
A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Petitioner LARRY MICHAEL LEAL filed a Petition for a Writ of Habeas Corpus by a

Person in State Custody challenging his conviction out of the 251st Judicial District Court of

Randall County, Texas, for aggravated assault with a deadly weapon in Cause No. 20034-C. For

the reasons set out hereafter, the United States Magistrate Judge is of the opinion petitioner's

application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

*A. Procedural background*

Petitioner was charged with aggravated assault with a deadly weapon. Petitioner pleaded

not guilty, and the case was tried before a jury. The jury found petitioner guilty. Punishment

was enhanced with two prior felony convictions, and the jury assessed a life sentence. State

Habeas Corpus Record (WR-77,206-01) p. 193. The judgment was affirmed on appeal. *Leal v.*

*State*, No. 07-09-00049-CR, 2010 WL 3633740 (Tex. App. – Amarillo September 20, 2010, *pet. ref'd*). The Texas Court of Criminal Appeals refused the petition for discretionary review. *Leal v. State*, No. PD-1401-10 (Tex. Crim. App. February 9, 2011). Petitioner filed a state habeas corpus application on January 11, 2012, having shown to have signed the application on December 22, 2011. The state habeas corpus application was denied without written order on March 7, 2012. *Ex parte Leal*, No. WR-77,206-01 (Tex. Crim. App. March 7, 2012).

Petitioner then filed this federal Petition for a Writ of Habeas Corpus with a memorandum in support on June 14, 2012, stating he placed them in the prison mail system on June 7, 2012. Documents 3 and 4. Also before the Court are respondent's answer and petitioner's reply. Documents 15 and 19.

### B. Evidence at trial

Ruben Coronado, an Amarillo police officer, testified at trial as follows. Reporter's Record Vol. 3, pp. 16-89. Coronado was at home on June 26, 2008. Shortly after 10 p.m. he heard tires screeching as a car stopped on the street. Coronado looked outside and saw defendant and a woman arguing. Two small children were in the car. Petitioner and the woman exited the car, and were standing in Coronado's driveway. Petitioner was yelling at the woman and put his hands around the woman's neck and began choking her. Coronado retrieved his police firearm and went outside. By this time petitioner was straddling the woman, and Coronado told him to get off of the woman. Petitioner, who was intoxicated, walked to the street and as he did, Coronado had the two children go into Coronado's house. Petitioner kicked and punched his own car. He picked up a large stone from Coronado's garden, returned to his car, and began hitting the car with the rock. He was smashing the car, including the hood, headlights, and

windshield, with the rock. Petitioner looked at and made eye contact with Coronado. Petitioner

then walked toward Coronado. Petitioner raised the rock above his head, maintaining eye contact

with Coronado. The rock was about 10-12 inches in diameter and weighed about 20 pounds.

Coronado drew his police firearm and pointed it at petitioner. Coronado yelled at petitioner to

stop and drop the rock. Coronado said he was with the Amarillo Police Department. Coronado

again told petitioner to drop the rock or Coronado would shoot petitioner. Petitioner did not

comply. With the rock still raised, petitioner took a few more steps onto Coronado's property

and walked directly toward Coronado in an aggressive manner. Coronado believed petitioner

intended to hurt him. Coronado felt threatened and testified that the rock could have caused

death or serious bodily injury. Coronado testified petitioner came within 15-20 feet of him. If

petitioner had taken two more steps toward him, Coronado said he would have shot petitioner.

Petitioner then turned, went to the car, and hit the car again with the rock. As he was hitting the

car again, petitioner said, "APD, I am going to f___ you up. You're APD. I am going to send

my homies to f___ up your home and family." Petitioner said he was in a gang. Coronado

perceived these statements as a threat. Petitioner went into an alley. He returned and threw a

beer bottle at the car. Petitioner yelled, "APD I am going to f___ you up." Petitioner went into

the alley again.

      Corporal Kenneth Donais of the Amarillo Police Department testified as follows.

Reporter's Record Vol. 3, pp. 159-72. Corporal Donais responded to a call about the

disturbance. He encountered petitioner in an alley. Petitioner's breath had a strong odor of

alcohol. Petitioner said people were throwing bottles at him. After returning to the Coronado

house with petitioner, Cpl. Donais consulted with other officers at the scene and arrested

petitioner. Petitioner, who was in Donais's police car, tried to kick out a car window. Officers tried to get petitioner to stop, but petitioner resisted. An officer used pepper spray on petitioner, which calmed petitioner down.

Officer Cory Henderson of the Amarillo Police Department testified. Reporter's Record Vol. 3, pp. 173-89. He responded to the call to Coronado's house. After Cpl. Donais drove up with petitioner, Henderson used pepper spray to stop petitioner from trying to kick out the car window and to prevent petitioner from kicking him. Petitioner had a strong odor of alcohol. Henderson also testified that if someone took the rock, lifted it above their head, and approached him, he would consider that to be threatening. He also testified that the rock, so used, would be capable of causing death or serious bodily injury. Henderson answered a hypothetical question and testified that if someone approached Henderson with the rock above that person's own head, Henderson would draw a weapon and tell the person to stop and drop the rock, but if that person continued toward him, Henderson would believe that person intended to strike him. Henderson would be alarmed even if that person were twenty feet away.

Francis Coronado, Officer Coronado's wife, testified and corroborated Officer Coronado's version of the events. Reporter's Record Vol. 3, pp. 190-202. Petitioner had the rock above his head, and he looked toward the door where Ms. Coronado was standing with the woman petitioner had assaulted. Then petitioner looked at Officer Coronado. Petitioner moved toward Officer Coronado who identified himself as a police officer and ordered petitioner to drop the rock. Petitioner did not drop it. Instead, he walked forward. Petitioner stopped. Ms. Coronado did not remember exactly what petitioner said, but to the best of her recollection he said, "You're APD. You f____ed up. I know where you live now. My homies and I are coming

after you and your family and your house.  Your house is going to get f____ed up." Petitioner

was about twelve feet from Officer Coronado when he made these threats.  Ms. Coronado later

measured the distance.  Petitioner returned to the car and beat the car with the rock.  Ms.

Coronado tried to calm the woman and her two children, one of whom was four years old and the

other was eighteen months old.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend respondent is holding him in violation of the Constitution

and laws of the United States for the following reasons:

1.   Petitioner received ineffective assistance of trial counsel, because counsel failed to request jury instructions on the lesser included offenses of deadly conduct and misdemeanor assault;

2.   Petitioner received ineffective assistance of trial counsel, because counsel failed to objection to the prosecutor's discriminatory use of peremptory strikes on all the Hispanic verniremembers;

3.   Petitioner received ineffective assistance of trial counsel, because counsel failed to secure the presence of an eyewitness at trial;

4.   Petitioner received ineffective assistance of trial counsel, because counsel failed to pursue a meaningful plea bargain;

5.   The trial court abused its discretion and denied petitioner the effective assistance of counsel when the court denied petitioner's motion for appointment of substitute counsel;

6.   There was no evidence to show that petitioner had the intent to cause imminent bodily injury to the complainant;

7.   Petitioner received ineffective assistance of appellate counsel, because appellate counsel failed to challenge the sufficiency of the evidence.

III.
STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act, a petitioner may not obtain habeas corpus relief in federal court with respect to any claim adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision contrary to or involved an unreasonable application of clearly established federal constitutional law or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Texas Court of Criminal Appeals heard and adjudicated on the merits the claims petitioner presents in his federal habeas corpus petition when it denied petitioner's application for state habeas relief without a written order. *Ex parte Hester*, Nos. WR-75,335-05 & WR-75,335-06; *see Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Petitioner's burden before this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002).

Petitioner has failed to meet this burden. Further, review of petitioner's claims confirms this petition should be denied. Petitioner asks for an evidentiary hearing. However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Brumfield v. Cain*, 744 F.3d 918, 926-27 (5th Cir. 2014) (quoting *Cullen v. Pinholster*, ─── U.S. ───, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2010). Petitioner is not entitled to an evidentiary hearing.

IV.

MERITS OF PETITIONER'S ALLEGATIONS

*A. Ineffective assistance of trial counsel*

In grounds one, two, three, and four, petitioner contends he received ineffective assistance of trial counsel. The proper standard for reviewing a claim of ineffective assistance of counsel is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687. An attorney's performance was deficient if the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91. This is a heavy burden which requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Additionally, petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial. *Strickland*, 466 U.S. at 687. Specifically, to prove prejudice, petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional

errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland,* 466 U.S. at 697.

When a state prisoner asks a federal court to set aside a conviction or sentence due to ineffective assistance of counsel, the federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes defense counsel's performance fell within the bounds of reasonableness. *Burt v. Titlow,* ___ U.S. ___, 134 S.Ct. 10, 13, 187 L. Ed. 2d 348 (2013). Petitioner's ineffective assistance of counsel claims were adjudicated on the merits in a state court proceeding, and the denial of relief was based on a factual determination that will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A state-court factual determination is not unreasonable merely because the federal court would have reached a different conclusion in the first instance. *Burt*, 134 S.Ct. at 15. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. Petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014). Petitioner Leal argues there

should be no presumptions of correctness, because the state court made no written fact findings in his case. However, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, as they did in petitioner Leal's case, it is an adjudication on the merits, and is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (recognizing this Texas state writ jurisprudence).

*1. Failure to request jury instructions on lesser included offenses*

Petitioner asserts trial counsel failed to request jury instructions on the offenses of deadly conduct under Tex. Penal Code § 22.05 and misdemeanor assault under Tex. Penal Code § 22.01, which he contends were lesser included offenses. In Texas, there is a "two-step analysis for determining whether a lesser-included-offense instruction should be given: (1) Are the elements of the lesser-included offense included within the proof necessary to establish the elements of the charged offense? (2) Is there evidence in the record that could allow a jury to find the defendant guilty of only the lesser-included offense?" *State v. Meru*, 414 S.W.3d 159, 161, 162 (Tex. Crim. App. 2013).

> [The first] step compares the elements of the offense as alleged in the indictment with the elements of the requested lesser offense. An offense will be a lesser-included offense where "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Ann. art. 37.09(1). To determine whether an offense qualifies as a lesser-included offense under this statute, we use the cognate-pleadings approach. *Ex parte Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009) (op. on reh'g). In *Watson*, we explained that
>
> > An offense is a lesser-included offense of another offense, under Article 37.09(1) of the Code of Criminal Procedure, if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory

> manner and means, that are alleged for purposes of providing
> notice) from which all of the elements of the lesser-included
> offense may be deduced. Both statutory elements and any
> descriptive averments alleged in the indictment for the
> greater-inclusive offense should be compared to the statutory
> elements of the lesser offense. If a descriptive averment in the
> indictment for the greater offense is identical to an element of the
> lesser offense, or if an element of the lesser offense may be
> deduced from a descriptive averment in the indictment for the
> greater-inclusive offense, this should be factored into the
> lesser-included-offense analysis in asking whether all of the
> elements of the lesser offense are contained within the allegations
> of the greater offense.

*Id.* at 273 (citations omitted).

> As stated in *Watson*, the elements of the lesser-included offense do not
> have to be pleaded in the indictment if they can be deduced from facts alleged in
> the indictment. *Id.* In this situation, the functional-equivalence concept can be
> employed in the lesser-included-offense analysis. When utilizing functional
> equivalence, the court examines the elements of the lesser offense and decides
> whether they are "functionally the same or less than those required to prove the
> charged offense." *McKithan v. State*, 324 S.W.3d 582, 588 (Tex. Crim. App.
> 2010) (citing *Farrakhan v. State*, 247 S.W.3d 720, 722–23 (Tex. Crim. App.
> 2008)); *Jacob v. State*, 892 S.W.2d 905, 908 (Tex. Crim. App. 1995).

*State v. Meru*, 414 S.W.3d at 162. "[The second step] is a fact determination and is based on the

evidence presented at trial. If there is evidence that raises a fact issue of whether the defendant is

guilty only of the lesser offense, an instruction on the lesser-included offense is warranted,

regardless of whether the evidence is weak, impeached, or contradicted. *Cavasos* [*v. State*, 382

S.W.3d 377, 383 (Tex. Crim. App. 2012)]." *State v. Meru*, 414 S.W.3d at 163. To satisfy the

second step, "[t]here must be affirmative evidence to rebut the greater element, and the jury must

not simply disbelieve evidence establishing the greater." *Hampton v. State*, 109 S.W.3d 437, 439

(Tex. Crim. App. 2003).

Petitioner was charged with aggravated assault under Tex. Penal Code § 22.02(a)(1),

which makes it a crime to commit an assault under § 22.01(a)(2) by "intentionally or knowingly threatening another with imminent bodily injury" and the person "uses or exhibits a deadly weapon during the commission of the assault." The indictment alleged petitioner did "intentionally and knowingly threaten Ruben Coronado with imminent bodily injury and did then and there intentionally and knowingly use and exhibit a deadly weapon, to-wit: a rock, that in the manner of its use and intended use was capable of causing death and serious bodily injury to Ruben Coronado, during the commission of said assault." State Habeas Corpus Record p. 166.

The deadly conduct statute makes it a crime if a person "recklessly engages in conduct that places another in imminent danger of serious bodily injury." Tex. Penal Code § 22.05(a). In the present case, petitioner was charged with intentionally or knowingly threatening another with imminent bodily injury, using or exhibiting a deadly weapon. Deadly conduct, by recklessly engaging in conduct that places another in imminent danger of serious bodily injury, could be a lesser included offense of aggravated assault. *See Blissit v. State*, 185 S.W.3d 51, 54-55 (Tex. App. — San Antonio 2005). Deadly conduct is a "nature of conduct" offense, and it is not a "result oriented" offense. *Ford v. State*, 38 S.W.3d 836, 844-45 (Tex. App. — Houston [14th Dist.] 2001). "A person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . .." Tex. Penal Code § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code § 6.03(b). "A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist . . .. The

risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code § 6.03(c).

For petitioner to have been entitled to an instruction on deadly conduct as a lesser included offense, there needed to have been evidence that petitioner recklessly threatened Coronado, instead of intentionally or knowingly threatening Coronado, such that petitioner could have been found guilty only of deadly conduct. Petitioner argues the jury could have disbelieved testimony that he intended to threaten the complainant.

The assault statute makes it a crime if a person "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code § 22.01(a)(2). For petitioner to have been entitled to an instruction on assault as a lesser included offense, there needed to have been evidence that the rock was not a deadly weapon. Petitioner does not point out any evidence from which the jury could have rationally found that the rock described in this case (10 to 12 inches in diameter and weighing 20 pounds) was not a deadly weapon.

In support of his claim, petitioner also relies on defense counsel's jury argument. Petitioner asserts counsel argued that there were other charges that could have been brought against petitioner based on the events, and counsel argued that the state overcharged the case instead of settling for a lesser charge. Reporter's Record Vol. 3, pp. 215, 221, and 223.

Specifically, defense counsel argued there were other charges the state could have pursued – driving while intoxicated, vandalism of the car, and domestic violence. *Id.* at 215. However, counsel pointed out that petitioner was not charged with those offenses and petitioner was only charged with aggravated assault with a deadly weapon. *Id.* Counsel argued petitioner

picked up the rock but did not turn toward the officer. *Id.* at 217. Instead, counsel argued,

petitioner beat the car with the rock. *Id.* Counsel recognized that the rock was a lethal weapon.

*Id.* But, counsel asserted petitioner did not walk to the property with intent to assault Officer

Coronado. *Id.* at 218. Counsel maintained that if Officer Coronado felt any fear, he would have

shot petitioner. *Id.* Counsel suggested petitioner was only going to throw the rock at the

building or throw it into the yard and walk away. *Id.* at 219. Counsel argued petitioner lacked

the intent to assault Officer Coronado and petitioner lacked the ability to assault Officer

Coronado because petitioner must have been too tired to do so. *Id.* Counsel claimed petitioner

was intoxicated and was destroying things. *Id.* at 220. Counsel pointed out that intoxicated

people say things that they lack the ability or will to do. *Id.* at 220-21. Counsel contended the

state overcharged this case, because the victim was a police officer. *Id.* at 221. Counsel asserted

Officer Coronado did not feel he was in danger and that Officer Coronado was simply watching

an intoxicated person beat on a car. *Id.* at 221-22. Counsel noted petitioner took two steps

toward Officer Coronado and then walked away with the rock. *Id.* at 222. Counsel argued the

jury could be certain of nothing other than that petitioner liked to destroy cars. *Id.* Counsel

concluded that the state had "overblown" this case and that there were other charges that would

have been legitimate, but the aggravated assault charge was not one of the legitimate charges. *Id.*

at 223.

      Contrary to petitioner's assertion, defense counsel did not argue that if petitioner was

guilty, he was only guilty of deadly conduct or assault without a deadly weapon. Instead, defense

counsel argued petitioner may have been legitimately charged with other offenses – driving while

intoxicated, vandalism of the car, and domestic violence, but was not guilty of aggravated

assault.

Trial counsel submitted an affidavit in response to petitioner's state habeas corpus application. State Habeas Corpus Record p. 155. Counsel stated there was no evidence that might have shown that petitioner was guilty only of deadly conduct or assault. *Id.* at 156.

At trial, there was evidence that petitioner beat his car with a large rock, smashing the hood, headlights, and windshield. Petitioner raised the rock above his head as he aggressively walked toward Coronado. Coronado announced he was a police officer, and he told petitioner to drop the rock or he would shoot petitioner. Petitioner took a few more steps toward Coronado. Petitioner then turned and went to the car, which he again beat with the rock while making verbal threats to Coronado. There was no evidence petitioner was only acting recklessly and that petitioner was not knowingly or intentionally threatening Coronado. Voluntary intoxication is not a defense to the commission of a crime in Texas, and voluntary intoxication cannot negate the culpable mental state in the commission of a crime. *Davis v. State*, 313 S.W.3d 317, 328-29 (Tex. Crim. App. 2010) (citing Tex. Penal Code § 8.04(a)). There was no evidence the large rock was not a deadly weapon. Petitioner has not shown there was evidence from which the jury could have concluded that if he was guilty, he was only guilty of deadly conduct by acting recklessly rather than knowingly or intentionally. *See Amaro v. State*, 287 S.W.3d 825, 830 (Tex. App. — Waco 2009) (no evidence that defendant was guilty only of deadly conduct); *see also Walker v. State*, 04-13-837-CR, 2014 WL 5463948 (Tex. App. — San Antonio, October 29, 2014) (same); *Timms v. State*, 05-13-559-CR, 2014 WL 2447709 (Tex. App. — San Antonio, May 30, 2014) (same); *Jackson v. State*, 14-11-781-CR, 2012 WL 3223675 (Tex. App. — Houston [14th Dist.], August 9, 2012) (same); *Latino v. State*, 09-09-204-CR, 2010 WL 5023211

(Tex. App. — Beaumont, December 8, 2010) (same).

Nor has petitioner shown there was evidence from which the jury could have concluded that if he was guilty, he was only guilty of assault by threatening Coronado without a deadly weapon. *See Jones v. State*, 01-13-431-CR, 2014 WL 5500485 (Tex. App. — Houston [1st Dist.], October 30, 2014) (no evidence that defendant was guilty only of assault by threatening without a deadly weapon); *Baxter v. State*, 12-03-42-CR, 2004 WL 1192618 (Tex. App. — Tyler, May 28, 2004) (same).

The state court could have determined that petitioner would not have been entitled to an instruction on assault or deadly conduct as lesser included offenses as a matter of state law. Therefore, the state court could have reasonably concluded that petitioner did not show deficient performance or prejudice for the lack of a request by counsel for a jury instruction on assault or deadly conduct as lesser included offenses. Petitioner has not shown the state court's rejection of this claim was unreasonable.

### 2.  Failure to make <u>Batson</u> objection

Petitioner contends trial counsel failed to object to the prosecutor's discriminatory use of peremptory challenges on all the Hispanic veniremembers. Specifically, petitioner complains the prosecutor used peremptory challenges to remove Rudolfo Garcia, Judith K. Gualtiere, and Rosa Ybarra Garner. A criminal defendant is denied equal protection when the state, with the intent to purposefully discriminate, exercises its peremptory challenges to remove veniremembers based on their race. *Batson v. Kentucky*, 476 U.S. 79, 86-87, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *see also* Tex. Code Crim. Proc. art. 35.261 (prohibiting peremptory challenges based on race).

Trial counsel's state habeas corpus affidavit states Mr. Garcia had reservations about

considering the upper end of the punishment range for aggravated assault. State Habeas Corpus

Record p. 158. After further questioning, Mr. Garcia said he could follow the law and the court's

instructions on the range of punishment. Trial counsel's affidavit states Mr. Garcia was a

vacillating juror, which provided a race-neutral basis for the prosecutor's peremptory strike.

Counsel also noted Mr. Garcia had family obligations that might have conflicted with his service

as a juror. Counsel said it would have been futile to object to the peremptory challenge of Mr.

Garcia. Petitioner points out that Mr. Garcia said he could consider the full range of punishment

and that Mr. Garcia said arrangements could be made for his family obligations.

Mr. Garcia said the punishment range of two to twenty years seemed a little extreme.

Reporter's Record Vol. 3, p. 53. In response to the judge's question about whether he could

consider the full range of punishment, Mr. Garcia said he believed he could do so. *Id.* at p. 105.

Mr. Garcia also said he could consider the punishment ranges if there were prior felony

convictions. *Id.*

Regarding his family situation, Mr. Garcia said he made arrangements so he would not

have to pick up his children. *Id.* at 111. However, he also said, "I work night shift so, you know,

I can't stay over here – been here all day. And that's going to be like that if I were to get picked.

I mean, I'm coming straight from work to serve." *Id.*

Even though Mr. Garcia ultimately said he could consider the full range of punishment,

he had previously stated the lowest punishment range of two to twenty years, unenhanced with

prior convictions, seemed a little extreme. Defense counsel could have reasonably concluded the

prosecutor would have been concerned about Mr. Garcia's views on the punishment range, which

would have been a non-racial basis for the use of a peremptory challenge. *See Blanto v.*

*Quarterman*, 543 F.3d 230, 246 n.8 (5th Cir. 2008).  Also, Mr. Garcia said he would be going

straight to court from his night-shift job.  Defense counsel could have reasonably concluded that

the prosecutor would have been concerned about whether Mr. Garcia would be alert or tired

during the trial, which would have been a non-racial basis for the use of a peremptory challenge.

*See Higgins v. Cain*, 720 F.3d 255, 266-67 (5th Cir. 2013).

      Trial counsel's state habeas corpus affidavit states, as best he remembers, that Ms.

Gualtiere was Anglo-American and was not Hispanic.  State Habeas Corpus Record p. 158.  Ms.

Gualtiere identified her race as "white" on her juror information card.  Clerk's Record p. 37.

Counsel concludes there was no basis to object to the prosecutor's use of a peremptory strike on

Ms. Gualtiere.  The state court could have reasonably determined that counsel's decision not to

raise a *Batson* objection regarding Ms. Gualtiere was within the bounds of reasonableness.

      Trial counsel reviewed his notes and the juror information sheet for Ms. Garner.  *Id.* at

158-59.  She was as unacceptable as a juror to defense counsel as she apparently was to the

prosecutor, based on her appearance, her job history, and her lack of jury experience.  Defense

counsel would have used a peremptory strike on Ms. Garner if he had not used all of his

peremptory strikes on questionable veniremembers ahead of her on the seating chart.  In Texas,

the statutory remedy for the racially-motivated use of a peremptory challenge is for the trial court

to dismiss the array of jurors and call a new array.  Tex. Code Crim. Proc. art. 35.261.  However,

the Texas Court of Criminal Appeals has observed the statutory remedy may be unconstitutional-

ly restrictive.  *State ex rel. Curry v. Bowman*, 885 S.W.2d 421, 424 (Tex. Crim. App. 1993).  The

Court of Criminal Appeals has held a trial court may reinstate the unconstitutionally removed

juror.  *Id.* at 425.  If the state's use of a peremptory strike on Ms. Garner would have been subject

to a *Batson* challenge, defense counsel could have reasonably chosen not to make such a challenge to avoid the reinstatement of an unacceptable juror. The state court could have reasonably determined that counsel's decision not to raise a *Batson* objection regarding Ms. Garner was within the bounds of reasonableness for effective assistance of counsel.

Defense counsel believed that raising a *Batson* objection to the state's peremptory challenges of three veniremembers was futile. Counsel is not required to make futile objections. *Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013). Petitioner has not shown defense counsel would have prevailed on a *Batson* objection, and he has not shown it would have been unreasonable for counsel to choose not to make a *Batson* objection regarding Ms. Garner, so petitioner has not shown deficient performance or prejudice for counsel's failure to object under *Batson*. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### 3. *Failure to secure the presence of an eyewitness at trial*

Petitioner contends counsel failed to have Denise Maciel, petitioner's girlfriend, present at trial. Ms. Maciel was the woman with petitioner at the scene of the offense. To show ineffective assistance of counsel for failure to present a witness, petitioner must identify the witness, demonstrate the witness was available to testify, and set out the content of the witness's proposed testimony. *Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001).

Petitioner asserts Ms. Maciel stated to police that petitioner had been drinking and she begged him to let her and her children out of the vehicle. Petitioner became upset and punched the rear-view mirror, knocking it to the floor. Petitioner yelled at her and hit her in the face with his fist. Ms. Maciel hit petitioner with the rear-view mirror and kicked him. When they stopped, petitioner left the car, and she and her children began running through the complainant's yard.

Petitioner contends Ms. Maciel was a neutral eyewitness and she could have contradicted the

complainant's testimony. He asserts that although Ms. Maciel stated to the police that petitioner

hit her first, perhaps the jury would have seen that he did not start the confrontation with Ms.

Maciel. Petitioner also contends that if Ms. Maciel had testified, the jury could have seen that he

was not charged with assaulting Ms. Maciel, public intoxication, or driving while intoxicated.

Petitioner states her testimony would have been favorable to him.

Defense counsel's affidavit states Ms. Maciel was subpoenaed by the state but failed to

appear. Counsel states:

> Applicant does not identify exactly what Ms. Maciel would have testified to or
> that she was, in fact, prepared to testify to any specific matters at the time of
> Applicant's trial. At most, Applicant suggests that she could have impeached the
> State's witnesses because she was a "neutral eyewitness." She was nothing of the
> sort and the State's file and my own independent investigation of the case bear
> this out. The testimony of the State's witnesses and the physical evidence clearly
> established that Applicant beat Ms. Maciel severely just moments before his
> fateful encounter with Officer Coronado. The photographs introduced into
> evidence convey the extent and severity of injuries inflicted on Ms. Maciel much
> more succinctly than mere verbal description may accomplish. It was my
> professional opinion then, as it remains today, that the harm in calling Ms. Maciel
> as a witness on behalf of the defense would have clearly outweighed any benefit
> to Applicant's case. By calling Ms. Maciel and exposing her to relentless cross-
> examination, the jury's attention would have been unnecessarily focused on the
> beating that Applicant intentionally inflicted on her on the night in question, thus
> harming his slim chance at acquittal as well as aggravating those factors upon
> which the jury would necessarily determine his punishment, assuming he was
> found guilty of the indicted charge. This was not in Applicant's best interest and I
> was not going to take the chance of running this risk, even if I had been able to
> track down the witness and persuade her to testify.

State Habeas Corpus Record pp. 159-60.

Petitioner has not shown Ms. Maciel was available to testify. Petitioner alleges her

testimony would have contradicted Officer Coronado's testimony, but he has not independently

established what her testimony would have been. Petitioner's allegation, that Ms. Maciel's

testimony would have contradicted the complainant's testimony, is conclusory. "Although pro se habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'" *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir.1990) (quoting *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir.1989)). Petitioner summarizes what Ms. Maciel's testimony would have been about the events leading up to the confrontation with Officer Coronado, based on what she told the police. However, none of that had anything to do with whether petitioner threatened Officer Coronado with bodily injury with a deadly weapon. Petitioner has not shown either deficient performance or prejudice for the failure to have Ms. Maciel testify. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### 4. *Failure to pursue a meaningful plea bargain*

Petitioner contends defense counsel met with him on July 8, 2008, and again on the day before trial started in December 2008. On the day before trial began, counsel relayed the state's plea offer of fifty years. Petitioner claims counsel told him that he would be found guilty and that he could only hope for a sentence at the low end of the punishment range. Because of petitioner's prior convictions, the minimum sentence was twenty-five years. Petitioner asserts trial counsel did not engage in serious or meaningful plea bargaining.

Defense counsel informed petitioner about the state's plea offer, so there was no ineffective assistance of counsel under *Missouri v. Frye*, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (counsel has duty to inform defendant of state's plea offer). Petitioner does not allege counsel improperly advised him about the law or the case, causing him to reject the plea agreement in violation of *Lafler v. Cooper*, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).

Instead, petitioner contends counsel should have engaged in meaningful plea bargaining. Defense counsel's affidavit states, "[T]he fifty-year offer was the *only* offer that Applicant was going to get on this case and the reasons are simple. Given his four prior felony final convictions, *all for aggravated assault*, and the particular facts of the instant case which militated in favor of very severe punishment, the offer was simply the best he could hope for. The prosecutor made that clear to me before trial and this is exactly what I told Applicant prior to trial." State Habeas Corpus Record p. 160 (emphasis in original).

Petitioner does not identify what in particular should have done in plea negotiations. Petitioner has not shown the state would have offered less than fifty years if counsel would have done something differently in plea negotiations. Petitioner has not shown deficient performance or prejudice. He has not shown the state court's rejection of this claim was unreasonable.

Petitioner briefly contends the fact that counsel spent only fifteen minutes with petitioner on two occasions was ineffective assistance of counsel. However, petitioner does not explain what counsel could have discovered had he spent more time with petitioner. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir.1989). Petitioner does not allege what counsel would have discovered with further investigation and how the outcome of the trial would have been different. Petitioner has not shown deficient performance or prejudice. He has not shown the state court's rejection of this claim was unreasonable.

### B. Trial court's denial of petitioner's motion for appointment of substitute counsel

Petitioner contends the trial court erred in denying petitioner's motion for appointment of

substitute counsel.  In December 2008, shortly before trial, petitioner filed a motion to substitute

counsel.  Clerk's Record p. 83.  Petitioner complained that counsel was appointed on July 8,

2008, but counsel did not contact him until August 10, 2008.  Petitioner alleged he made

attempts to contact counsel through correspondence and telephone calls, but to no avail.

Petitioner asserted counsel contacted him on August 10, 2008, and on December 15, 2008.  He

contended counsel's strategy was for petitioner to plead guilty in return for a fifty-year sentence,

but that this was due to counsel's lack of preparation.  Petitioner also alleged appointed counsel

attempted to charge petitioner $500 for representation on a habeas corpus application seeking a

bond reduction.

　　　　The trial court denied the motion after inquiring into it.  Reporter's Record Vol. 2, pp. 2-

5; Clerk's Record p. 87.  The prosecutor stated that defense counsel examined the state's file on

at least four occasions.  Reporter's Record Vol. 2, p. 4.  The court knew counsel to be competent

and knew counsel did good work.  *Id*. at 3 and 4.

　　　　Petitioner contends the trial court did not adequately inquire into his complaint about

defense counsel.  Petitioner asserts there was a lack of communication as shown by defense

counsel's failure to present Ms. Maciel as a witness.  However, as set out elsewhere in this

recommendation, petitioner has not shown Ms. Maciel was available and willing to testify, and

he has not shown what her testimony would have been and how it would have affected the result

of the trial.

　　　　To obtain habeas corpus relief, petitioner must show there was a constitutional violation

that harmed him.  *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000).  He is not entitled to relief

on the grounds of trial court error, unless the error was of a constitutional nature.  *Brown v.*

*Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Counsel was appointed, and a defendant does not have a constitutional right to appointed counsel of defendant's choice. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

Petitioner has not alleged facts showing he received ineffective assistance of counsel. Petitioner has not shown the trial court violated his constitutional rights in denying the motion to substitute counsel. He has not shown the state court's rejection of this claim was unreasonable.

### C. Sufficiency of the evidence

Petitioner contends the evidence was insufficient to prove he made a threat of imminent bodily injury. Petitioner argues the verbal threats he made to Officer Coronado were threats of future harm and were not threats of imminent harm under *Devine v. State*, 786 S.W.2d 268 (Tex. Crim. App. 1989). He also asserts Officer Coronado was not in imminent danger of bodily injury, because Coronado had his weapon aimed at petitioner, petitioner was intoxicated, and petitioner was too far away to have injured Coronado.

In determining whether the evidence is sufficient, the test is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The assault statute makes it a crime if a person "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code § 22.01(a)(2).

> [C]ourts "have defined 'imminent' to mean 'ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near.' . . . Black's Law Dictionary defines "imminent" to mean "near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous."

*Devine v. State*, 786 S.W.2d at 270 (citations omitted); *see also Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012). A threat of future harm is not a threat of imminent bodily injury. *Id.* at 270-71. "The gist of the offense of assault, as set out in Section 22.01(a)(2), is that one acts with intent to cause a reasonable apprehension of imminent bodily injury (though not necessarily with intent to inflict such harm). *Tidwell v. State*, 187 S.W.3d 771, 775 (Tex. App. — Texarkana 2006). "The focus of the inquiry should be whether the threat was 'imminent' — not merely whether the threat was conditional. *Id.* at 774. Threats do not have to be verbal. Threats may be communicated by action or conduct. *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984). Assault by threat under Tex. Penal Code § 22.01(a)(2), which forms the basis of aggravated assault under § 22.02(a)(1), "is conduct-oriented, focusing upon the act of making a threat, regardless of any result that threat might cause." *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008).

The facts are that petitioner beat his car with a large rock. Then, petitioner approached Officer Coronado in an aggressive manner and raised the large rock over his own head, maintaining eye contact with Coronado. Petitioner kept walking toward Coronado even after Coronado identified himself as a police officer, pointed a firearm at petitioner, and told petitioner to stop and drop the rock. After taking a few more steps toward Coronado, petitioner returned to the car and hit the car with the rock again. Petitioner then verbally threatened to harm Coronado, and he threatened that his associates would harm Coronado's house and family.

The jury could have rationally concluded that petitioner's conduct in menacingly approaching Coronado with the raised rock, keeping eye contact, was a threat of imminent bodily injury. Officer Coronado testified that petitioner's conduct was threatening, and Officer

Henderson testified that such conduct would have been threatening.  It is irrelevant whether

petitioner ultimately could have caused bodily injury because he would have been shot if he had

not retreated.  The offense was complete when petitioner's conduct threatened Coronado.  The

jury also could have rationally concluded that petitioner verbally threatened imminent bodily

harm to Coronado personally.  Even if the verbal threat to Coronado's house and family was not

imminent, the jury could have determined that the verbal threat to Coronado was a threat of

imminent bodily injury.  Petitioner has not shown that the state court's rejection of the

sufficiency of evidence claim was unreasonable.

### D. Ineffective assistance of appellate counsel

Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct.

1396, 18 L.Ed.2d 493 (1967), informing the appellate court that there were no arguable issues.

Counsel explained why there was sufficient evidence.  Petitioner argues appellate counsel should

have argued the evidence was insufficient under *Devine v. State*, 786 S.W.2d 268, for the reasons

petitioner set out in his habeas petition.

To make out a claim of ineffective appellate counsel, a petitioner must meet the two-

prong test of *Strickland v. Washington.  Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145

L.Ed.2d 756 (2000).  To establish deficient performance, a petitioner must show that counsel

unreasonably failed to discover and raise nonfrivolous issues.  *Id.*  To establish prejudice, the

petitioner "must show a reasonable probability that, [but for counsel's error], he would have

prevailed on appeal." *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694).

As explained previously in this recommendation, the evidence was sufficient to convict.

Therefore, appellate counsel did not render ineffective assistance by failing to argue the evidence

was insufficient. Petitioner has not shown the state court's rejection of this claim was unreasonable.

## V.

## RECOMMENDATION

Petitioner has failed to present any cognizable or meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner LARRY MICHAEL LEAL be DENIED.

## VI.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _2\text{6}_ day of August, 2015.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin,* 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).